UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TERRY TYRONE SMITH,

       Plaintiff,                               CIVIL ACTION NO. 08-14696

     v.                                      DISTRICT JUDGE JOHN FEIKENS

STEPHEN GEELHOOD, BRYAN           MAGISTRATE JUDGE MARK A. RANDON
WATSON, BYRON McGHEE,
WILLIAM ASHFORD, and
DANIEL DUPUIS,

       Defendants.
_____/

**REPORT AND RECOMMENDATION ON
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**I. INTRODUCTION**

Plaintiff, Terry Tyrone Smith ("Plaintiff"), brought suit against Detroit Police Officers Stephen Geelhood (Geelhood"), Bryan Watson ("Watson"), Byron McGhee ("McGhee"), William Ashford ("Ashford"), and Daniel Dupuis ("Dupuis") (collectively "Defendants"), alleging that they violated his Fourth Amendment rights by arresting and prosecuting him without probable cause.[1] Specifically, Plaintiff claims that Defendants lied about Plaintiff engaging in suspected narcotic transactions and having control of a vehicle, which contained a

---

[1] Plaintiff's First Amended Complaint adds the City of Detroit as a Defendant; however, the City has not yet been served.

large quantity of cocaine. Presently before the Court is Defendants' Motion for Summary Judgment based on qualified immunity. Since the undersigned finds that only Ashford and Geelhood made the alleged untruthful observations and that Watson, McGhee and Dupuis, if anything, reasonably relied on those observations, IT IS RECOMMENDED that Defendants' Motion for Summary Judgment be GRANTED as to Watson, McGhee and Dupuis and DENIED as to Ashford and Geelhood.

## II. FACTS

*A.     Ashford's Version of Relevant Events*

A day or two before July 17, 2006, Ashford claims to have received information from a "cooperating defendant" that an individual named Terry Smith (Plaintiff), using the street name "T" was selling cocaine in the City of Detroit. (Dkt. No. 30, Ex. A, pp. 17-18) The cooperating defendant also advised Ashford that he had made a deal to purchase drugs from T and gave Ashford a physical description of the suspect. After receiving this information, Ashford briefed Sergeant Jackson who put together a crew to effectuate any necessary arrests. (Dkt. No. 30, Ex. A, p. 20) In addition to Sergeant Jackson and Ashford, the members of the crew were Geelhood, Watson, McGhee, and Dupuis.

On the evening of July 17, 2006, Ashford had another conversation with the cooperating defendant who gave him a clothing description of T and told Ashford that he was on his way to meet T in the area of Rutherford and Florence in the City of Detroit for an alleged drug buy. (Dkt. No. 30, Ex. A, pp. 27-28) The cooperating defendant also indicated that he expected a large quantity of drugs to be present at the scene. (Dkt. No. 30, Ex .A, p. 29)

Within minutes, Ashford arrived at the location of Rutherford and Florence and began surveillance. (Dkt. No. 30, Ex. A, p. 27) Ashford then claims to have observed an individual fitting T's description engage in two suspected narcotics transactions. Specifically, on two occasions, Ashford observed Plaintiff walking towards the trunk of a Dodge Stratus, opening the trunk, closing the trunk and then walking towards another occupied vehicle and placing his hands inside that car. (Dkt. No. 30, Ex. A, p. 27) Believing Plaintiff's actions were consistent with a person selling drugs, Ashford left the location, briefed the crew, and returned to the scene in a police van along with a marked scout car. (Dkt. No. 30, Ex. A, pp. 29-30) At the scene, Ashford testified that he observed Plaintiff standing 2 to 3 feet from the trunk of the Dodge Stratus with the trunk closed. (Dkt. No. 30, Ex. A, p. 31) Upon seeing the police, Plaintiff fled the scene. (Dkt. No. 30, Ex. A, p. 31)

B.  *Geelhood's Receipt of Information and Independent Observations*

As part of the crew, Geelhood received information from Ashford that "somebody's selling dope out of a trunk." (Dkt. No. 30, Ex. B, p. 25) Geelhood, therefore, rode to the scene in the police van along with Ashford, Sergeant Jackson and Dupuis. Once there, from about one hundred (100) feet away, Geelhood testified that he observed Plaintiff "slamming the trunk [of the Dodge Stratus] and then running." (Dkt. No. 30, Ex. B, p. 27) Geelhood later opened the trunk of the car and "recovered (2) brick kilos of cocaine and (1) plastic bag containing, numerous plastic bags of cocaine." (Dkt. No. 30, Ex. L, p. 2)

C.     *Watson, McGhee and Dupuis*

Watson was assigned to the arrest team and was the driver of the marked scout car stationed in the area of Rutherford and Florence. (Dkt. No. 30, Ex. L, p. 3) McGhee was a passenger in the car. (Dkt. No. 30, Ex. L, p. 4) Watson and McGhee received information from Ashford, via radio, that a suspected narcotics transaction was taking place. They and the other crew members then met with Ashford to be briefed, before going to the scene. "While pulling up to the location [Watson] observed [Plaintiff] running east on Florence, and northbound on Prevost with P.O. Ashford giving chase."[2] (Dkt. No. 30, Ex. L, p. 3) McGhee did not report making an observation of Plaintiff at the scene. (See Dkt. No. 30, Ex. L, p. 4) Watson and McGhee later located and picked up Ashford and Plaintiff (who was in custody) in front of 16564 Prevost.

Dupuis arrived at the scene in the police van with Ashford. There is no report of Dupuis making any observations of Plaintiff.[3]

D.     *Plaintiff's Version of Events and the Testimony of Other Witnesses*

Terry Smith testified he did not have possession of the drugs, did not sell drugs to any person in the neighborhood or have possession of the vehicle in which the cocaine was found. (Dkt. No. 30, Ex. D, pp. 15-20.) Prior to his arrest, Plaintiff claims he was at the home of his

---

[2] Plaintiff admits to running from the scene and being chased by Ashford. (Dkt. No. 30, Ex. D, p. 17)

[3] At the motion hearing, Plaintiff's counsel acknowledged that neither Watson, McGhee, or Dupuis made any observations that are alleged to be untruthful.

friend Charles Sullivan ("Sullivan") for two to three hours. (Dkt. No. 30, Ex. D, p. 15.) He was dropped off at the Sullivan house by his girlfriend after leaving his mother's home (Dkt. No. 30, Ex. D, pp. 11-12), and therefore, arrived at the scene just minutes before his arrest.

### 1. *Christopher Walker*

Christopher Walker ("Walker") was with Plaintiff prior to his arrest. Walker lived on the corner of Rutherford and Florence and testified that he was walking through his front door onto the porch when he observed Plaintiff riding in a car with Sullivan. The car pulled up in front of his house and, as Plaintiff exited the vehicle, he asked Walker for a beer. Walker went to his refrigerator, returned with the beer and began talking with Plaintiff on the corner when the police arrived and arrested Plaintiff. According to Walker, Plaintiff never went near the Dodge Stratus, never sold drugs to anyone, and never took anything from the car from the time he got there until the police arrived. (Dkt. No. 30, Ex. E, pp. 9-16.)

### 2. *Alberta Walker*

Reverend Alberta Walker, Walker's mother, also lives on the corner of Rutherford and Florence. On the night of Plaintiff's arrest, she was sitting on the porch of her home talking with her friend, Ms. Hightower. She testified that she observed Plaintiff in a vehicle, which pulled up in front of her home, and heard him ask her son for a beer. Plaintiff waited on the sidewalk talking with a group of people while her son got a beer from the kitchen. She then saw the police arrive and learned of Plaintiff's arrest later that evening. Like her son, she never saw Plaintiff go to the Dodge Stratus parked on the corner or take anything from it. She did not see Plaintiff sell drugs to anyone from the time he arrived at the scene. (Dkt. No. 30, Ex. F, pp. 4-13.)

### 3. *Adella Hightower*

Adella Hightower lives on Rutherford, across the street from and near the Walker's residence. Ms. Hightower testified that she was on the porch talking with Rev. Walker when she saw a car pull up and Plaintiff get out. She observed Plaintiff standing on the corner in front of Ms. Walker's home. He was talking with the other men when the police arrived and the group scattered. Plaintiff was at the location for only a short period of time. She never saw Plaintiff go to the car parked on the corner and never saw him take anything from it. She did not see Plaintiff selling, or in possession of, drugs. (Dkt. No. 30, Ex. G, pp. 4-14)

### 4. *Brandon Fields*

Brandon Fields ("Fields") is a friend of Plaintiff. Fields was one of the men standing on the sidewalk near the corner. He testified that he walked to the area from his home on Prevost, a block away. Fields was talking with his friends for approximately 5 to 10 minutes when Plaintiff arrived in a Cadillac. He observed the Dodge Stratus on the corner of Rutherford and Florence. He, too, claims that Plaintiff did not go to the car, retrieve anything from it, or sell drugs. When the police arrived Plaintiff ran, but Fields just walked from the scene. (Dkt.No. 30, Ex. H, pp. 5-13)

### E. *Other Circumstances*

Plaintiff also points to three other circumstances, in support of his claim that Defendants contrived his involvement in the sale of drugs and control of the Dodge Stratus. First, no fingerprints from the drugs found in the Dodge Stratus "were ever reported as being found." Second, none of the officers appeared at Plaintiff's second criminal trial, resulting in the

dismissal of the charges.[4] And third, the Dodge Stratus turned out to be a rented vehicle with no evident connection to Plaintiff. (See Dkt. No. 30, pp. 19-21)

### III. STANDARD OF REVIEW

Defendants move for summary judgment pursuant to Federal Rule of Civil Procedure 56(b), which states that "[a] party against whom a claim, counterclaim, or cross-claim is asserted or a declaratory judgment is sought may, at any time, move with or without supporting affidavits for summary judgment in the party's favor as to all or any part thereof." Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

In deciding a motion for summary judgment, the court must view the evidence and draw all reasonable inferences in favor of the non-movant. *See Matsushita Electric Industrial Co., Ltd. et al. v. Zenith Radio Corp., et. al.*, 475 U.S. 547, 587 (1986); *see also B.F. Goodrich Co. v. U.S. Filter Corp.*, 245 F.3d 587, 591-92 (6th Cir. 2001). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. Once the moving party has carried his burden, the party opposing the motion "must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita*, 475 U.S. at 587. The opposing party cannot merely rest upon the allegations contained in his pleadings. Rather, he must submit

---

[4] Ashford testified that neither he nor his fellow officers received subpoenas for the second trial. (Dkt. No. 30, Ex. A, pp. 16-18)

evidence demonstrating that material issues of fact exist. *Banks v. Wolfe County Bd. of Educ.*, 330 F.3d 888, 892 (6th Cir. 2003); Fed. R. Civ. P. 56(e). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587, 106 S. Ct. 1348 (quoting *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 289, 88 S. Ct. 1575, 1592 (1968)).

## IV. ANALYSIS

Plaintiff seeks damages for his alleged illegal arrest and resulting detention for several months in the Wayne County Jail. In particular, Plaintiff's Complaint alleges that Defendants violated his Fourth Amendment right to be free from continued detention without probable cause and that Defendants conspired with one another to deprive him of liberty by fabricating the story of his involvement with the drugs (See Amended Complaint ¶ 38). However, while the undersigned agrees that the sworn testimony of the non-law enforcement eye witnesses creates a question of fact as it relates to truthfulness of the observations of Ashford and Geelhood, Plaintiff has not produced any evidence that Watson, McGhee or Dupuis were engaged in a conspiracy or made any independent untruthful observations and, as such, they are immune from suit.

*A.*     *Qualified Immunity*

"Government officials, including police officers, are immune from civil liability unless, in the course of performing their discretionary functions, they violate the Plaintiff's clearly established constitutional rights." *Jones v. Byrnes*, No. 08-1889 at * 4 (6th Cir. Nov. 9, 2009). When ruling upon the issue of qualified immunity, the Court must consider two threshold questions:

  (1)  Taken in the light most favorable to the nonmoving party, do the facts alleged show the officer's conduct violated a constitutional right? If, so, then

  (2)  Was the violated constitutional right clearly established under law so as to place a reasonable officer on notice that his conduct would be unlawful in the situation he confronted?

See *Saucier v. Katz*, 533 U.S. 194 (2001); relying upon *Anderson v. Creighton*, 483 U.S. 635 (1987); *Siegert v. Gilley*, 500 U.S. 226, 232 (1991); and *Wilson v. Laid*, 526 U.S. 603, 615 (1999). Although *Saucier* mandated a determination of these questions in sequential order, courts are no longer required to do so. *Pearson v. Callahan*, __ U.S. __, 129 S.Ct. 808 (2009).

In this case, the Court must decide whether there is a genuine issue in dispute over whether Defendants' conduct violated one of Plaintiff's constitutional rights. Plaintiff alleges, pursuant to 42 U.S.C. § 1983, that his rights under the Fourth Amendment to the United States Constitution were violated.

  ***1. Plaintiff has Alleged a Constitutional Violation With Respect to Ashford and Geelhood.***

A person's Fourth Amendment rights are violated when evidence is knowingly fabricated and a reasonable likelihood exists that the false evidence would affect the decision of a jury.[5] *Gregory v. City of Louisville*, 444 F.3d 725 (6th Cir. 2006); *Spurlock v. Satterfield*, 167 F.3d 995,

---

[5] The Fourth Amendment reads as follows:
  The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized. U.S. Const. Amend IV.

1005 (6th Cir. 1999); see also *United States v. Epley*, 52 F.3d 571, 576 (6th Cir.1995) (holding that where officers planted evidence on victim as a means to arrest and charge him, the officer violated his Fourth Amendment right to be free from seizure without probable cause and due process rights to be free from false arrest and having false evidence presented against him).

In this case, only two possibilities exist, Ashford either saw Plaintiff engage in suspected narcotics transactions, as he has testified to under oath, or he lied about his observations. Likewise, Geelhood either saw Plaintiff slam the trunk of the Dodge Status, or he did not. However, for purposes of this motion, the evidence must be viewed in the light most favorable to Plaintiff, and his testimony, along with the other witnesses' testimony set forth above, if believed, would establish that both officers fabricated their observations knowing that doing so would result in Plaintiff's unlawful arrest and detention.

### 2. *The Constitutional Violation was Clearly Established.*

It is both common sense and fundamental to the profession of policing that law enforcement officers understand the impropriety of fabricating evidence of a crime. As such, prior to this incident, it was well-established that an individual's arrest and detention without probable cause was actionable under § 1983 as a Fourth Amendment violation. *Albright v. Oliver*, 510 U.S. 266, 274-275 (1994); *Spurlock*, 167 F.3d at 1005 (6th Cir. 1999).[6]

---

[6] Even if this were not the case "[t]here is an exception to the need for particularized prior law where the police conduct is so excessive and lies so obviously at the core of what the Fourth Amendment prohibits that the unlawfulness of the conduct would have been readily apparent to an officer." *Jennings v. Jones*, 499 F.3d 2, 29(1st Cir. 2007)(dissenting op.) citing *United States v. Lanier*, 520 U.S. 259, 270-71 (1997).

### 3. *Plaintiff Has Not Alleged a Constitutional Violation Against Watson, McGhee or Dupuis.*

Plaintiff acknowledged during the hearing on the motion that neither Watson, McGhee or Dupuis made any alleged untruthful observations. Instead, if anything, these three officers reasonably relied on the observations of Ashford in pursuing and detaining Plaintiff, for which they cannot be held civilly liable. *Hardesty v. Hamburg Twp.*, 461 F.3d 646, 656 (6th Cir. 2006) (Police officers who entered a home in reliance on information they received from other officers were insulated from civil liability under § 1983); *Feathers v. Aey*, 319 F.3d 843, 851 (6th Cir. 2003). Therefore, Watson, McGhee and Dupuis are entitled to qualified immunity unless it can be established that they engaged in a conspiracy with Ashford and/or Geelhood.

### B. *There is no Evidence of a Conspiracy*

Plaintiff does not indicate whether he asserts his conspiracy claim under 42 U.S.C. § 1983 or 42 U.S.C. § 1985(3). (Dkt. No. 27, ¶ 38) A claim under § 1985(3) requires the showing of a conspiracy to deprive Plaintiff of the equal protection of the laws, and an act in furtherance of the conspiracy that caused injury to Plaintiff. Further, Plaintiff must demonstrate that the conspiracy was motivated by a class-based animus, such as race. *Smith v. Thornburg*, 136 F.3d 1070, 1078 (6th Cir. 1998) ("In the absence of any evidence that the defendants [police officers] agreed to deprive plaintiff of his constitutional rights, we conclude that the District Court properly granted summary judgment on behalf of the defendants on plaintiff's § 1985(3) claim"); *Johnson Hills and Dales Gen. Hosp.*, 40 F.3d 837, 839 (6th Cir. 1994), *cert. denied*, 514 U.S. 1066 (1995). And, there must be a predicate constitutional violation to support a claim of

conspiracy under 42 U.S.C. § 1985. *Volunteer Medical Clinic, Inc., v. Operation Rescue*, 948 F.2d 218, 226 (6th Cir. 1991). Only one of these factors has been demonstrated by Plaintiff. There is has been no showing of class-based *animus*, and no showing of an agreement between these Defendants to injure Plaintiff.

A civil conspiracy under 42 U.S.C. § 1983 is an agreement between two or more persons to injure another by unlawful action. Plaintiff must demonstrate: (1) that a single plan existed; (2) the alleged coconspirators shared in the general conspiratorial objective; and (3) an overt act was committed in furtherance of the conspiracy. *Weberg v. Franks*, 229 F.3d 514, 526 (6th Cir. 2000). Whether proceeding under 42 U.S.C. § 1985 or for civil conspiracy under § 1983, a plaintiff must show some evidence of coordinated actions between the alleged conspirators. *See Bass v. Robinson*, 167 F.3d 1041, 1050 (6th Cir. 1999); *Collyer v. Darling*, 98 F.3d 211, 229 (6th Cir. 1996). Conclusory or vague accusations that do not describe some "meeting of the minds" cannot state a claim for relief under 42 U.S.C. §§ 1983 or 1985. *See Naguib v. Illinois Dept. of Professional Regulation*, 986 F.Supp. 1082, 1092 (N.D. Ill. 1997); *Pollack v Nash*, 58 F.Supp.2d 294, 299-300 (S.D. NY. 1999).

With respect to the alleged conspiracy between Defendants, Plaintiff has not alleged coordinated actions sufficient to maintain a conspiracy claim. His complaint is devoid of facts indicating a meeting of the minds. Plaintiff's conclusory labeling of Defendants as co-conspirators, without more, is insufficient to state a claim as a matter of law and should be dismissed. *Ashcroft v. Iqbal*, __ U.S. __, 129 S.Ct. 1937, 1949 (2009) ("tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal

conclusions.") Accordingly, Defendants Watson, McGhee and Dupuis are entitled to qualified immunity and should be dismissed from this action.

## V.  CONCLUSION

In light of the foregoing, the undersigned RECOMMENDS that Defendants' Motion for Summary Judgment be GRANTED as to Watson, McGhee and Dupuis but DENIED as to Ashford and Geelhood.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).  The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be no more than 20 pages in length

unless, by motion and order, the page limit is extended by the court.  The response shall address each issue contained within the objections specifically and in the same order raised.

                          S/Mark A. Randon
                          MARK A. RANDON
                          UNITED STATES MAGISTRATE JUDGE

Dated:  November 13, 2009

### Certificate of Service

I hereby certify that a copy of the foregoing document was mailed to the parties of record on this date, November 13, 2009, by electronic and/or ordinary mail.

                          s/Melody R. Miles
                          Case Manager to Magistrate Judge Mark A. Randon